NELSON, District Judge. The assignee under the general assignment for the benefit of creditors is entitled to the disbursements legitimately made in the execution of his trust before the debtor was adjudged bankrupt. He had paid out at that time for collections, etc., quite an amount, and such expenditures would seem to have been just as necessary to realize money out of the estate had it been in charge of an assignee in bankruptcy. There can be no objection to an allowance for these expenses, and no creditor dissents. He has, however, presented a bill for personal services as assignee, claiming payment for more than fifteen days' employment, and also for attorneys' fees paid by him. The claim for services does not rest on any better footing than the ordinary debts of creditors. The assignee was aware of the insolvency of the debtor at the time the deed to him was executed, and also knew that a contingency might arise when his title under the assignment must yield to that of an assignee in bankruptcy. Such an assignment was an act of bankruptcy on the part of the debtor, and in fraud of the bankrupt act [of 1867 (14 Stat. 517)], and evidence of an attempt to defeat its operation. The assignee is chargeable with knowledge of facts which would render the deed to him void, and by his conduct was aiding the debtor to place his assets in course of distribution different from that contemplated by the bankrupt law. There is nothing in the merits of his claim which entitle it to a preference, but the amount being fixed by the state court as reasonable compensation, he can prove up his claim as any other creditor before the register in bankruptcy. The attorneys' fee was for drawing up, and attending to, the business connected with the assignment, and as this service is alleged to have been done on behalf of the debtor, it can only be allowed on proof as any other claim. It was rendered at the instance of the debtor. The creditors now objecting never requested it, and there is nothing in the papers before me, except an order by the state court declaring the sum reasonable, which entitles the claim to any consideration. These two claims must take their dividends on a regular distribution of the bankrupt's estate, and cannot be preferred. Ordered accordingly.

LAIRD (CUSHING v.) See Cases Nos. 3,508–3,510.

## Case No. 7,990.

LAIRD v. DICK et al.

[4 Cranch, C. C. 666.] [1]

Circuit Court, District of Columbia. Nov. Term, 1835.

LETTERS TESTAMENTARY—REVOCATION.

Letters testamentary granted without security, agreeably with the will of the testator, may be revoked by the orphans' court, upon the petition of creditors.

[Bill by John Laird's executor against Elizabeth Dick and others.]

This was an appeal from an order of the orphans' court made on the 25th of August, 1835, revoking the letters testamentary because the executor had not complied with an order of that court requiring him to give security and return an inventory; the letters having been originally granted on the 30th of July, 1833, accompanied by an order saying that "no security to the executor's bond is required, nor any inventory of the personal estate to be returned to the court." The order of revocation was made on the petition of the creditors of the testator. The letters were originally granted without security in consequence of a clause in the will, by which the testator requests that no security should be required of his executor, at least as far as any gift or bequest was concerned; and that an appraisement should be dispensed with. The executor was not the residuary legatee.

THIS COURT, upon consideration of the testamentary law of 1798, c. 101; Id. subc. 3, §§ 3, 8; Id. subc. 10, § 9; Id. subc. 14, §§ 6, 7, affirmed the order of the orphans' court revoking the letters testamentary.

LAIRD (DICK v.). See Cases Nos. 3,891 and 3,892.

LAIRD (WETMORE v.). See Case No. 17,467.

LA JEUNE EUGENIE (UNITED STATES v.). See Case No. 15,551.

## Case No. 7,991.

Ex parte LAKE et al.

In re WHITING et al.

[2 Lowell, 544; [1] 16 N. B. R. 497.]

District Court, D. Massachusetts. Jan., 1877.

BANKRUPTCY—PROOF FOR FUTURE RENT.

1. Where A., B., C., and D., copartners, were lessees of a building, and bound by the covenants to pay rent for several years, and two of the partners left the firm, and the others, with some new partners, assumed the debts and liabilities, and the new firm became bankrupt,—*Held*, that the retired partners had not the right to prove against the estate a claim for unliquidated damages by reason of their liability on the covenants of the lease, unless there were some special stipulation for such a contingency contained in the lease.

[Cited in Re Burgess, 83 Me. 343, 22 Atl. 223; Bowditch v. Raymond, 146 Mass. 115, 15 N. E. 289.]

2. A provision in a lease that the lessors might re-enter and re-let the premises at the risk of the lessees, who should remain liable for the rent, and be credited with the sums actually realized, will not authorize a proof for unliquidated damages against the estate of the bankrupt lessees

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]